In the Matter of the Accounting of ELLSWORTH B. BUCK et al., as Executors of BERTA E. DREYFUS, Deceased.

Surrogate's Court, Richmond County, July 22, 1948.

*David R. J. Arnold* for executors.

*L. W. & A. B. Widdecombe* for Richmond Memorial Hospital (Dreyfus Foundation).

*Lahr & Lahr* for Margaret S. Quinn, respondent.

BOYLAN, S. This is a proceeding for the settlement of the final account of the executors of the last will and testament of Berta E. Dreyfus. Two questions of construction are presented for the court's determination: (1) Whether the two bequests of 100 shares each of the common stock of William Wrigley, Jr., Company to Visiting Nurse Association of Staten Island, Inc., and the Staten Island Council, Boy Scouts of America, Inc., respectively contained in paragraphs "Fifth" and "Sixth" of decedent's will are general or specific? (2) Whether the executors are entitled to commissions on the proceeds of the sale of decedent's jewelry and automobile which were sold by them and the cash distributed pursuant to the terms of a compromise agreement between the respective claimants?

Paragraph "Second", "Fifth" and "Sixth" of the will read as follows:

"Second: I give and bequeath to Margaret S. Quinn if she shall be in my employ at the time of my decease, the sum of One Thousand dollars ($1,000.) and all my furniture, pictures, silver, personal and household effects which I may own at the time of my decease, and although I impose no trust or duty on her I request her out of such furniture, pictures, silver, personal and household effects to distribute articles among my friends in accordance with a letter which I expect to leave with her. In the event that Margaret S. Quinn shall not be in my employ at the time of my decease, I then give to my friend, Eleanor Sutter, wife of Pastor Carl J. Sutter, all said furniture, pictures, silver, personal and household effects which I may own at the time of my decease and although I impose no trust or duty on her I request her out of such furniture, pictures, silver, personal and household effects to distribute articles among my friends in accordance with a letter which I expect to leave. * * *

"Fifth: I give and bequeath to the Visiting Nurse Association of Staten Island, Inc., now located at No. 61 Stuyvesant Place, St. George, Staten Island, New York, one hundred (100) shares of the common capital stock of Wm. Wrigley, Jr., Company, absolutely and forever. Without limiting or intending to limit the absolute nature of this bequest, and without intending to impress any trust thereon, it is my wish and earnest request that said stock, or the proceeds thereof, be retained and preserved and the income therefrom used to continue and further the good work now being performed by said Visiting Nurse Association of Staten Island, Inc., and that this stock together with the stock of the Wm. Wrigley, Jr., Company which I have

previously given to said Visiting Nurse Association of Staten Island, Inc., and the proceeds thereof on any reinvestment, shall so long as held be known as the ' Berta E. Dreyfus Memorial.'

"Sixth: I give and bequeath to The Staten Island Council, Boy Scouts of America Inc., one hundred (100) shares of the common capital stock of Wm. Wrigley, Jr., Company, absolutely and forever. Without limiting or intending to limit the absolute nature of this bequest, and without intending to impress any trust thereon, it is my wish and earnest request that said stock, or the proceeds thereof, be retained and preserved and the income therefrom be used for the purposes of Camp-O-Ree, now held at the Short Term Camp at New Dorp, Staten Island."

There were four dividends aggregating $400 received on the stock of William Wrigley, Jr., Company before the stock certificates were transferred and delivered by the executors in payment of these legacies. The legatees claim that the legacies set forth in paragraphs "Fifth" and "Sixth" are specific and hence they are entitled to the dividends. The residuary beneficiary Richmond Memorial Hospital, Dreyfus Foundation, likewise contends that these are specific legacies and therefore the executors are not entitled to any commissions thereon.

If these are general legacies the residuary beneficiary would be entitled to the dividends (*Matter of Security Trust Company,* 221 N. Y. 213) and the executors would be entitled to commissions. (Surrogate's Ct. Act, § 285.)

It was stipulated that the decedent had in her possession at the time she died one thousand and one (1,001) shares of William Wrigley, Jr., Company stock and that these were represented by ten certificates for one hundred shares each and one certificate for one share. It was further stipulated that the testatrix left ample funds to pay all claims, debts and demands against her estate and all inheritance taxes.

In every construction proceeding the endeavor of the court must be to ascertain the intent of the testator and to carry out that intent so far as it is legally capable of effectuation. (*Matter of Buttner,* 243 N. Y. 1; *Matter of Hughes,* 225 App. Div. 29, affd. 251 N. Y. 529; *Nicholas* v. *Farmers' Loan & Trust Company,* 224 App. Div. 540.) It is the intention of the testator as gathered from his entire will, which determines whether a legacy is general or specific. (*Matter of Security Trust Company, supra.*)

The courts favor general legacies. This proposition was asserted by the Court of Appeals in the early case of *Tifft* v. *Porter* (8 N. Y. 516, 521) in the following language:

" The inclination of the courts to hold legacies to be general, rather than specific, and on which the rule is based, that to make a legacy specific, its terms must clearly require such a construction, rests upon solid grounds. The presumption is stronger that a testator intends some benefit to a legatee, than that he intends a benefit only upon the collateral condition that he shall remain till death, owner of the property bequeathed. The motives which ordinarily determine men in selecting legatees, are their feelings of regard, and the presumption of course is that their feelings continue and they are looked upon as likely to continue. An intention of benefit being once expressed, to make its taking effect turn upon the contingency of the condition of the testator's property being unchanged, instead of upon the continuance of the same feelings which in the first instance prompted the selection of the legatee, requires, as it ought, clear language to convey that intention." (See, also, *Matter of Strasenburgh,* 136 Misc. 91; *Bliven* v. *Seymour,* 88 N. Y. 469, 476.)

A bequest of stocks or bonds may be either general or specific dependent upon the intention of the testator. In the adjudicated cases, a distinction is drawn between " legacies of stocks or shares in public funds," i.e., stocks or bonds dealt in by the general public, and legacies of stocks or securities representing complete or partial control of a closely held private corporation wherein a gift of the controlling shares would constitute a virtual gift of the enterprise. With respect to the former, the distinguishing features of a general and a specific bequest have been stated as follows:

" In those cases in which legacies of stocks or shares in public funds have been held to be specific, some expression has been found from which an intention to make the bequest of the particular shares of stock could be inferred. Where, for instance, the testator has used such language as, ' my shares,' or any other equivalent designation, it has been held sufficient. But the mere possession by the testator at the date of his will of stock of equal or larger amount than the legacy, will not of itself make the bequest specific." (*Tifft* v. *Porter,* 8 N. Y. 516, 518, *supra.*)

It has been held that a slight indication of an intention to give shares then in decedent's ownership is enough to make the legacy specific. (*Matter of Security Trust Company,* 221 N. Y. 213, *supra; Matter of Davis,* 184 Misc. 952.)

There is evidence that the testatrix intended specific gifts of the Wrigley stock. The decedent had this stock in certificates

for 100 shares, the exact amount bequeathed in each instance. In connection with each gift she used these words, " it is my wish and earnest request that *said* stock or the proceeds thereof be retained and preserved and the income therefrom used * * *." The reference to " proceeds thereof " relates to a sale of stock by the legatee. Another indication that the testatrix intended that the legacies be specific is the direction in paragraph " Ninth " for payment of estate, succession, inheritance or transfer taxes from the residue of her estate " to the end that my legatees or devisees may receive in full the sums herein given to them." (*Matter of Security Trust Company,* 221 N. Y. 213, *supra; Matter of Davis,* 184 Misc. 952, 954, *supra; Cramer* v. *Cramer,* 35 Misc. 17, 19.)

The court holds that the bequests contained in Paragraphs " Fifth " and " Sixth " are specific.

Are the executors entitled to commissions on the proceeds of sale of decedent's jewelry and automobile which was sold by them and the cash distributed pursuant to the terms of a compromise agreement between the respective claimants? Margaret S. Quinn claims the items were intended to be included among the personal effects disposed of by Paragraph " Second " of decedent's will and Richmond Memorial Hospital, Dreyfus Foundation, the residuary beneficiary, contended that the items were not intended to be included and should be part of the residuary estate. A construction proceeding was brought in order to determine whether the disposition of decedent's " personal and household effects " under the second clause of the will included decedent's jewelry and automobile. The question was settled by a compromise wherein it was agreed as follows:

" First: A decree may be made and entered hereon by the Surrogate of Richmond County, which shall adjudge:

" (a) That the provisions of the clause numbered ' Second ' are valid and effectual.

" (b) That the true meaning and effect of said clause numbered ' Second ' in Decedent's will is, that decedent thereby intended to and did, by the gift in said clause of all her furniture, pictures, silver, personal and household effects, give and bequeath to the party of the second part, all the jewelry and the automobile, which she owned at the time of her death absolutely, and that said jewelry and automobile are to be taken and considered as included in and covered by the words personal and household effects.

" (c) * * *."

The decree entered in that proceeding ratified, confirmed and approved this agreement and directed that the second paragraph of decedent's will is a valid and effectuated disposition of property.

The executors urge that they are entitled to commissions because they were required to sell specific property and receive and distribute the proceeds of sale. The court does not agree with this contention. If the sale were necessary in order that administration expenses be paid their contention would be correct, but in this case it was stipulated that testatrix left ample funds to pay all claims, debts and demands against her estate. The provisions of decedent's will did not require the executors to sell this property but the same was required by the provisions of a compromise agreement. The right to sell this property came from the agreement and not the will. Since the agreement entered into by all interested parties is silent regarding the question of commissions, the determination must be made after a reading of the paragraph in question. Unquestionably that paragraph creates a specific legacy and therefore the executors are not entitled to commissions thereon. (Surrogate's Ct. Act, § 285, *Matter of Bourne,* 119 Misc. 43, revd. 206 App. Div. 763, revd. 237 N. Y. 341; *Matter of Wing,* 184 Misc. 379; *Matter of Good,* 145 Misc. 431.)

Enter decree judicially settling the account and in accordance herewith.